IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DUEWA BATSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-11-01690 |
| BRANCH BANKING AND TRUST COMPANY | * | |
| | * | |
| Defendant. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff DuEwa Batson ("Plaintiff" or "Batson") has brought this employment discrimination action against her former employer Branch Banking and Trust Company ("Defendant" or "BB&T") alleging religious discrimination in violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* (Title VII). Specifically, Batson alleges that Defendant BB&T terminated her employment because she could not work on Saturday, the day on which she observes the Sabbath. As a result, she filed the complaint in this case alleging failure to accommodate (Count I) and disparate treatment (Count II) in violation of Title VII. After a period of discovery, Defendant BB&T filed a Motion for Summary Judgment (ECF No. 17) pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 17) is DENIED.

1

BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). On May 29, 2007, Plaintiff DuEwa Batson ("Plaintiff" or "Batson") began working for Defendant Branch Banking & Trust Company ("Defendant" or "BB&T") as a part-time teller in the Easton, Maryland branch. Batson Decl. ¶ 2, ECF No. 19-4. At first, Ms. Batson worked every Saturday with her day off on Wednesday. *Id.* ¶ 4; Pl.'s Compl. ¶ 7, ECF No 1. In February of 2008, Ms. Batson volunteered to be cross-trained as a relationship banker. Batson Decl. ¶ 5. She then continued to perform her teller responsibilities while occasionally assisting as a relationship banker. *Id.* ¶ 7. Later that year, on November 1, 2008, Ms. Batson was promoted to the part-time position of senior teller because she had completed all the relevant training for that position. Batson Decl. ¶ 6. Her responsibilities remained essentially the same. *Id.*

That same month, although raised in the Pentecostal Church, Ms. Batson converted to the Hebrew Israelite religion. *Id.* ¶ 11. "Hebrew Israelites are African Americans who generally follow the religious practices of Judaism." *Id.* ¶ 10. When observing the Sabbath, Hebrew Israelites are required to refrain from "all activity that is for pleasure and for monetary gain from sundown on Friday until sundown on Saturday." *Id.* ¶ 12. Ms. Batson is both a follower and ordained minister of this religion. *Id.* ¶ 9. As a result of her conversion, Ms. Batson was no longer able to work on Saturdays and requested a religion accommodation from her employer in December 2008. *Id.* ¶ 14. This request was granted and Ms. Batson was no longer scheduled to work on Saturdays.

From May 2007 until February 2009, the Easton branch was composed of a financial center leader, Barbara Jones, a relationship banker, Tammy Eigendrobe, two full-time tellers, Shea Willey and Nancy Sparks, and two part-time tellers Ms. Batson and Teresa Kalenowski. Stuecker Decl. ¶ 4, ECF No. 17-8.  After Ms. Batson's conversion and BB&T's agreement to accommodate her religious belief, coverage at the branch consisted of Ms. Kalenowski who worked every Saturday, Ms. Wiley and Ms. Sparks working on alternating Saturdays, and Ms. Jones and Ms. Eigendrobe doing the same.  *Id.* ¶¶ 4-5.  However, in February of 2009, Ms. Jones was transferred to the Greensboro, Maryland branch and Ms. Gretchen Stuecker became the retail city executive at the Easton branch.  Batson Decl. ¶ 19; Stuecker Decl. ¶ 2. This change was meant to allow the Easton branch to focus on commercial banking. Stuecker Decl. ¶ 3.  Ms. Batson alleges that after Ms. Jones's departure, she did not notice any differences between her responsibilities and those of Ms. Stuecker, except for the fact that Ms. Stuecker did not work alternating Saturdays.  Batson Decl. ¶ 5.  Ms. Batson further alleges that when Ms. Eigendrobe needed time off, she was replaced by Ms. Phillips of the Cambridge branch.  *Id.* ¶ 20.  According to Ms. Batson, Ms. Phillips had also served as a "backup relationship banker at the Easton branch prior to [her] accommodation."  *Id.* ¶ 21.

Defendant alleges that following Ms. Jones's departure, Ms. Eigendrobe was forced to work every Saturday because Ms. Stuecker "was already working 50-60 hours a week getting to know [her] new role and community, and was often involved in community activities on Saturday mornings as part of [her] role at the bank." Stuecker Decl. ¶ 5.  Ms. Stuecker then claims that she "realized that forcing Ms. Eigendrobe to work every Saturday

and not having a back-up relationship banker for Saturdays was not sustainable because it did not allow for coverage in the event of vacation, illness or other absences." *Id.* ¶ 6. Ms. Stuecker also asserts that after researching several alternatives in order to continue to accommodate Ms. Batson while ensuring adequate relationship banker coverage, she concluded that Ms. Batson would have to resume working on alternate Saturdays. *Id.* ¶ 10. According to Ms. Stuecker the branch could not function properly without a relationship banker as that "would have significantly impacted the branch's ability to service customers" and also presented security concerns. *Id.* ¶ 8. She further stated that despite seeking volunteers, she was unable to find anyone willing to cross-train as a relationship banker. *Id.* ¶ 9.

On April 20, 2009, Ms. Stuecker informed Ms. Batson that her accommodation was rescinded and that she would have to resume working as a relationship banker on alternate Saturdays starting on May 2, 2009. Batson Decl. ¶ 21; Stuecker Decl. ¶ 10. Ms. Stuecker alleges that one of the reasons for the change in accommodation was the fact that BB&T "had looked at other possible ways to continue to accommodate her request not to work Saturdays . . . but were not able to identify a reasonable alternative to asking Plaintiff to work alternating Saturdays." Stuecker Decl. ¶ 10. She allegedly informed Ms. Batson that the change could be temporary but also "encouraged [her] to reach out to Charlie Rogers, the Employment Consultant for the Chesapeake Region, to see if there were any other available positions within the bank that did not require Saturday work." *Id.*

Upon learning of the change in schedule, Ms. Batson allegedly reminded Ms. Stuecker that she had made a permanent life change which required her not to work on Saturdays. Batson Decl. ¶ 21.  Ms. Batson also claims that she offered to compromise by setting Saturday as her scheduled day off "so that the other branch employees could have whichever weekday [she] worked as their day off." *Id.* ¶ 23.  However, she alleges that Ms. Stuecker did not respond to this request, nor was she "offered the option of swapping shifts with other employees or the option of using holidays or paid or unpaid leave for Saturdays on which BB&T wanted [her] to work." *Id.* ¶ 24.  Ms. Batson claims that she reminded Ms. Stuecker that she was a teller and only volunteered to be a relationship banker and suggested that other relationship bankers from the Cambridge branch be asked to fill in at the Easton branch on Saturdays. *Id.* ¶ 25.  Ms. Batson also reached out to Mr. Rogers, the regional recruiter for BB&T, to see if other positions were available and indicated that she would even travel as far as Annapolis, Maryland but was informed on April 24, 2009 that no other positions were available. *Id.* ¶¶ 26-27.  Ms. Batson also alleges that she was never informed that to preserve her position and her accommodation, she could serve as a "roving teller or in a '0' teller position." *Id.* ¶ 28.

After protesting and seeking an alternate compromise, Ms. Batson alleges that she was given an ultimatum: report to work on May 2, 2009 or face termination. *Id.* ¶ 30.  Ms. Batson explained that she was already compromising by working after sundown on Fridays and could not work on Saturdays because of her religious beliefs and her need to observe the Sabbath. *Id.* ¶¶ 25-30.  Despite her alleged efforts to find a compromise, Ms. Stuecker

terminated her employment on Friday, May 1, 2009 because Ms. Batson refused to report to work the following day. *Id.* ¶ 31. Ms. Batson further alleges that the two full-time tellers and the other part-time teller at the branch were not made aware that she needed or received a religion accommodation. *Id.* ¶ 33.

The record reflects that after Ms. Batson's termination, Ms. Eigendrobe continued to work most Saturdays as a relationship banker for nearly two months. Def.'s MSJ Ex. 42, BBT4645-47, ECF No. 19-42 (SEALED). She was replaced by Ms. Stuecker on Saturday May 9 and June 20, 2009 as well as by Ms. Phillips from the Cambridge branch on May 6 to 7, 2009. *Id.* at BBT4644-47. Ms. Phillips was not paid overtime or given financial incentives to serve as her replacement. Def.'s MSJ Ex. 50, Phillips Dep. at 40:1-15, ECF No. 19-50. In June 2009, Ms. Phillips was transferred to the Easton branch and worked there as a relationship teller until her retirement in October 2011. *Id.* at 52:21-53:8, 85:14-19. Ms. Phillips welcomed the transfer as the Easton branch was closer to her home. *Id.* at 55:3-7. She was able to work every other Saturday and because she was trained as both a teller and relationship banker, she assisted in both positions as needed. *Id.* at 59:10-13; Def.'s MSJ Ex. 16, Stuecker Dep. 164:8-11, 165:3-11, ECF No. 19-16. At the time of her deposition, Ms. Stuecker worked alternating Saturdays with Ms. Eigendrobe as a relationship banker. Stuecker Dep. 81:3-5, 82:11-16. She had begun to do so when Ms. Kalenowsky, the other part-time teller, was terminated in the summer of 2010. *Id.* at 69:21-70:8.

On July 19, 2009, shortly after her termination, Ms. Batson filed an employment discrimination charge with the Equal Opportunity Employment Commission ("EEOC")

alleging failure to accommodate and discrimination on the basis of religion.  Batson Decl. ¶ 35.  After conducting an investigation, the EEOC issued a determination in her favor and instructed the parties to enter conciliation proceedings.  EEOC Determination at 3, ECF No. 19-56.  Specifically, the EEOC determined that, based on the investigative record, "there [was] reasonable cause to believe that [BB&T] violated Title VII . . . when it failed to accommodate [Ms. Batson] and terminated her employment based upon her religious belief (Sabbath Keeper)."  *Id.* at 2.  The parties having failed to reach a satisfactory outcome, Ms. Batson filed the present action in this Court alleging failure to accommodate (Count I) and discrimination on the basis of religion (Count II) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* (Title VII).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

Pursuant to Rule 56, the moving party may prevail by demonstrating that there is a

lack of evidence submitted by the opposing party to carry its burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party opposing summary judgment must proffer specific facts or objective evidence showing that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

## ANALYSIS

Defendant Branch Banking & Trust Company ("BB&T") argues that summary judgment as a matter of law in its favor is appropriate because this case presents no genuine disputes of material facts in this case. Essentially, BB&T contends that it provided Ms. Batson with a reasonable accommodation and that any further accommodation would have imposed an undue hardship on its employees and business. Furthermore, BB&T contends that Ms. Batson cannot establish a *prima facie* case of religious discrimination nor sustain her ultimate burden of proving said discrimination.

Title VII of the Civil Rights Act of 1964 ("Title VII") provides that "it shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). It is well established that two theories of religious discrimination exist: (1) failure to accommodate and (2) disparate treatment. *See Chalmers v. Tulon Co.*, 101 F.3d 1012, 1017 (4th Cir. 1996). Ms. Batson's Complaint alleges both.

The parties have submitted conflicting affidavits and sworn pleadings in this case. The United States Court of Appeals for the Fourth Circuit has held that in such cases, summary judgment is generally precluded. *See Am. Metal Forming Corp. v. Pittman*, 52 F.3d 504, 507 (4th Cir. 1995). This Court need not rely on a party's factual allegations if they are contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). In this case, the conflicting affidavits and factual allegations are not contradicted by the record. Accordingly, for the reasons set forth below, summary judgment is DENIED, as there are genuine issues of material fact.

## I.  Failure to Accommodate (Count I)

In Count I, Ms. Batson alleges that BB&T failed to accommodate her religious observance of the Sabbath by requiring her to work on alternating Saturdays despite its prior agreement not to schedule her for work that day. To establish a *prima facie* religious accommodation claim, Ms. Batson must prove that (1) "she has a bona fide religious belief that conflicts with an employment requirement; (2) [ ] she informed the employer of this belief; (3) [ ] she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers*, 101 F.3d at 1019 (quoting *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985), *aff'd on other grounds*, 479 U.S. 60 (1986)). This Court has previously held that "[a]n employer is obligated to accommodate employees who refuse to work on particular days of the week because of religious reasons." *Abdelkader v. Sears, Roebuck & Co.*, 780 F. Supp. 2d 389, 394 (D. Md. 2011) (citing *E.E.O.C v. Ithaca Industries, Inc.*, 849 F.2d 116 (4th Cir. 1988). Ms. Batson has met her initial burden and produced evidence that she is

Hebrew Israelite, that she informed BB&T of her religion, and that she was terminated after indicating that she could not work on alternating Saturdays because of her beliefs.

Once an employee has established a *prima facie* case, the employer then bears the burden to show "that it could not accommodate the plaintiff's religious needs without undue hardship." *Chalmers*, 101 F.3d at 1019. "To satisfy its burden, the employer must demonstrate either (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances or (2) that such accommodation was not provided because it would have caused an undue hardship." *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008). To show undue hardship in religious accommodation cases, an employer must prove that the cost of the accommodation would be more than "de minimis." *See Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 741 n. 10 (D. Md. 1996) (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 65 (1977)). Permitting an employee to "swap shifts" is a reasonable accommodation. *Abdelkad*, 780 F. Supp. at 394 (citing *Firestone Fibers & Textiles Co.*, 515 F.3d at 315-16).

In this case, BB&T argues that providing Ms. Batson with alternate Saturdays off is a reasonable accommodation of her religious beliefs. However, in order for Ms. Batson to observe the Sabbath as required by her religion, she cannot work on any Saturday. The record reflects that there is conflicting evidence as to whether BB&T discussed the option of shift swaps with Ms. Batson. Moreover, although BB&T established that it required a trained relationship banker in the Easton branch on Saturdays, it failed to provide sufficient evidence to show that continuing to accommodate Ms. Batson's request would impose an

10

undue hardship. BB&T has not submitted evidence as to costs to it or to its employees as evidence of the undue hardship her continued accommodation would cause. Additionally, the events which occurred after Batson's termination are indicative of the fact that BB&T found other ways to provide relationship banker coverage on Saturdays. Accordingly, genuine issues of material fact exist as the whether BB&T's accommodation was reasonable and whether Ms. Batson's requested accommodation would impose an undue burden on BB&T.

## II.   Disparate Treatment (Count II)

Count II of Ms. Batson's Complaint alleges discriminatory termination on the basis of religion. Under Title VII, a plaintiff may allege a claim of gender discrimination under either the "burden-shifting" scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973) or the "mixed-motive" framework.[1] *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284-85 (4th Cir. 2004). Under the *McDonnell Douglas* scheme, a plaintiff first bears the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). If a plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a legitimate, nondiscriminatory justification for its action. *Id.* Finally, if the employer carries its burden, the plaintiff must show that the employer's legitimate, nondiscriminatory reason is merely a pretext for discrimination. *Id.* Alternatively, a plaintiff can allege a claim of

---

[1] Title VII provides for "mixed-motive" liability in that "an unlawful employment practice is established when the complaining party demonstrates that . . . religion . . . was a motivating factor for any employment practice even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m).

religious discrimination under the "mixed-motive" approach by pleading, through direct or circumstantial evidence, that his or her religion "was a motivating factor" in the employer's decision to terminate. *Hill*, 354 F.3d at 284–86.

To establish a *prima facie* claim of religious discrimination, Ms. Batson must prove that (1) she is a member of a protected class, (2) she performed her job satisfactorily, (3) she was terminated from employment, and (4) the position remained open to similarly qualified applicants after her termination. *See Marrs v. Marriott Corp.*, 830 F. Supp. 274, 281 (D. Md. 1992) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Batson can also show that BB&T "acted with discriminatory motive or treated [her] less favorably" because of her religion. *Id.*

The evidence in the record demonstrates that Ms. Batson is a member of the protected class, that she performed her job satisfactorily, that she was terminated from employment, and that her position remained open to similarly qualified applicants. In fact, the record demonstrates that she was only replaced by Ms. Phillips about two months after her termination. As far as mixed-motives are concerned, the record also reflects that she was terminated because of her inability to work on Saturdays.

Once a Plaintiff has established a *prima facie* case of discrimination, "the EEOC's recommendation that a finding of discrimination be made is entitled to deference." *Bell v. Bolger*, 708 F.2d 1312, 1321 (8th Cir. 1983). However, there is conflicting evidence as to the degree to which her religion impacted her employment termination. While BB&T submitted evidence that Ms. Batson was terminated because she could not perform one of her job

requirements, that is working on alternating Saturdays, BB&T has not submitted sufficient evidence to indicate that this requirement could not have been waived in light of Ms. Batson's adherence to the Hebrew Israelite religion.  Moreover, Ms. Batson indicated that she was more than willing to have Saturdays as her scheduled day off and allow other branch employees to take whichever weekday she worked as their day off.  As a result, there is conflicting evidence in the record as to whether another employee could have replaced or swapped shifts with Ms. Batson.  Accordingly, a genuine issue of material fact remains concerning whether BB&T had a legitimate non-discriminatory reason to terminate Ms. Batson's employment.  Therefore, summary judgment is precluded and Defendant's Motion for Summary Judgment is DENIED.

## CONCLUSION

For the reasons stated above, Defendant Branch Banking & Trust Company's Motion for Summary Judgment (ECF No. 17) is DENIED.

A separate Order follows.

Dated:		September 25, 2012		/s/_____
						Richard D. Bennett
						United States District Judge